IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KAREN MAHONY PLAINTIFF

v. Civil No. 2:26-cv-02134

MYLE RATCHFORD;
MAKAYLA MAHONY;
MICHEL MEYERS;
CHERALYN MAHONY;
SARA ADAMS
(also known as Sara Davis);
SERGEANT DOUG GILLIAM
(Franklin County Sheriff's Department);
DEPUTY HARRISON NEWHART
(Franklin County Sheriff's Department);
DISPATCHER ATHENA PELLS
(Franklin Couty Arkansas);
ERNIE WITT
(Attorney, Franklin County, Arkansas);
CHARLES HOSKYN
(Attorney, Franklin County, Arkansas);
KALEB BRAUMGARTEN
(Attorney, Franklin County, Arkansas)
FRANKLIN COUNTY, ARKANSAS DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983. The case was directly assigned to the undersigned Magistrate Judge pursuant to General Order 2024-02, but not all parties to the action have consented to the jurisdiction of the undersigned. *See* 28 U.S.C. § 636(c). Accordingly, for the purpose of preservice review pursuant to 28 U.S.C. § 1915A(a), the case will automatically be reassigned to a United States District Judge and referred to the undersigned for a report and recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3).

## I. BACKGROUND

Plaintiff filed her Complaint on August 19, 2026. (ECF No. 2). Plaintiff titles her Complaint as a "Complaint for Violation of Civil Rights (42 U.S.C. § 1983) Civil Conspiracy and Conspiracy to Commit Fraud on the Court." (ECF No. 2 at 2). Plaintiff's Complaint is disjointed, vague, and comprised of multiple subsections. The subsections are as follows:

- The August 2023 Fabricated Incident and Child Removal. This subsection begins with a reference to a horse theft and the kidnapping of a person. (*Id*. at 4-5).
- The September 2023 Horse Theft and Fabricated 911 Call. (*Id*. at 5-6).
- Unlawful Entry and Court Manipulation. (*Id*. at 6-9).
- The December 2024 Fabricated Felony Charges. (*Id*. at 9-11).
- Abandonment of Counsel and Coerced General Release. (*Id*. at 11-13).
- Conclusion: Summary of the Conspiracy & Criminal Motive. (*Id*. at 13).
- The Central Orchestrator: Myle Ratchford's Control. (*Id*. at 13-14).
- Unreasonable Risk-Taking Under Color of Law. (*Id*. at 14).
- Falsification of Scenes. (*Id*. at 14).
- Aiding and Abetting Property Theft. (*Id*. at 14-15).
- Weaponizing Child Protective Services. (*Id*. at 15).
- The Ultimate Motive: Total Displacement. (*Id*. at 15).
- Property Seizure. (*Id*. at 15).
- Custody Deprivation. (*Id*. at 15-16).
- Addendum: Coordinated Public Harassment Campaign. (*Id*. at 16).

Plaintiff lists ten counts for relief. These include claims under the Fourteenth Amendments, Civil Conspiracy, Fourth Amendment, Sixth Amendment, Intentional Infliction of Emotional Distress, and Conspiracy to Commit Fraud on the Court and Subversion of Justice.

(ECF No. 2 at 16-21). Plaintiff seeks compensatory and punitive damages, as well as the immediate return of her championship show horse and pony, the voiding of any non-consensual liability waivers signed under duress while incarcerated without counsel, and all fees and costs. (*Id*. at 21-22).

Exhibits attached to Plaintiff Complaint include police reports dated August 24, 2023, and September 2, 2023. Based on these documents, Plaintiff called the police in August and reported that her daughter had possibly been kidnapped. Plaintiff called the police again in September and reported that her daughter had stolen her horse. Plaintiff was subsequently arrested and booked into the Franklin County Jail on September 2, 2023, on two counts of domestic assault and two counts of terroristic threats. (ECF No. 2 at 23-26). A first page of a Complaint for Replevin of horses by Plaintiff's daughter's guardian is included. (*Id*. at 27). Also included is a Franklin County Sheriff's Department incident report dated December 23, 2024, which lists several charges against an individual named Elizabeth Ashley Brownell. (*Id*. at 31). Finally, there are several pages of what appear to be a series of text messages and/or screen shots entitled "Smear Campaign." (*Id*. at 32-38).

Because Plaintiff alleged that she was arrested and incarcerated, but did not identify any state criminal cases, the Court researched state court records. It appears that two cases were filed against her on September 2, 2023[1]: *State v. Karen Francine Mahony*, Case No. OZS-23-612 (2 charges of Assault – 3rd degree – Family or Household Member); and *State v. Karen Francine Mahony*, Case No. OZS-23-613 (two charges of Terroristic Threatening – 2nd Degree). In both cases, Plaintiff was represented by attorney Ernest Witt. She pled no contest to the charges in both cases, and as part of her plea agreement, judgment was postponed for six months. If there were no further problems between herself and her daughter during that six months, the charges were to

[1] Information available on SearchAR Courts (last accessed Sept. 24, 2026).

be dismissed in both cases. Plaintiff mentions a December 2024 felony criminal case brought against her. The Court cannot locate a felony criminal case against her in that timeframe; but on March 3, 2025, the Plaintiff was charged with, and ultimately found guilty of possession of drug paraphernalia, third degree battery, refusal to submit to arrest, and failure to appear. This is *State v. Karen Francine Mahony*, Case No. OZS-25-159.

## II. LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal

framework." *Jackson*, 747 F.3d at 544 (cleaned up). The complaint must, however, still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. ANALYSIS

### A. Claim for Horse Theft

To the extent that Plaintiff alleges that private property (in the form of horses) was stolen from her, she has failed to state a plausible constitutional claim. Even if the horses were stolen, Plaintiff has adequate post-deprivation remedies. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994) (negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy); *Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Accordingly, because Plaintiff could seek redress in Arkansas state courts for her claim of loss of property, she has no claim pursuant to § 1983 in this regard.

### B. Private Actors

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) each defendant acted under color of state law and that (2) he or she violated a right secured by the constitution. *See West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). In general, private individuals are not state actors and do not act under color of state law for purposes of § 1983. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982). Private actors may incur Section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law. *See Miller v. Compton*, 122 F.3d 1094, 1098 (8th

Cir. 1997). A plaintiff must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiff's rights under the Constitution or laws of the United States. *See Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993); *see also Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005) (under § 1983, plaintiff must establish not only that private actor caused deprivation of constitutional rights, but also that private actor willfully participated with state officials and reached mutual understanding concerning unlawful objective of conspiracy).

Plaintiff identifies several named Defendants as private individuals. Plaintiff alleges that Defendants Ratchford and Adams (Davis) acted in a pre-arranged conspiracy with Defendant Deputy Newhart. (ECF No. 2 at 5). Plaintiff does not identify what Ratchford and Adams did together as part of this conspiracy. Plaintiff alleges that Defendant Ratchford fabricated a false police report in conjunction with Defendant Officer Newhart and DHS caseworker Olsen to initiate an emergency child removal. (*Id.*). Plaintiff alleges that her daughter Makayla was placed with Defendant Ratchford as a foster parent. (*Id.* at 5). Plaintiff alleges that Cheralyn Mahony trespassed on her property with Makayla and stole business documents. Plaintiff later states she and Makayla coordinated and conspired with Defendant Deputy Gilliam to "execute their unlawful scheme." (*Id.* at 17). Plaintiff identifies that scheme as one to steal her show horse. (*Id.* at 18). Plaintiff attaches a police report where Defendant Gilliam states that he responded to a 911 call where Plaintiff was hysterically yelling about someone stealing her horse and that she was going to kill someone. (*Id.* at 25). Another caller, later identified as Defendant Ratchford, also called 911 and stated that Plaintiff was in the middle of the road screaming at Ratchford, Cheralyn, and Makayla and threatening to kill them. (*Id.*). Defendant Michael Meyers was identified in the police report as Mrs. Ratchford's husband, who was at the scene and said the Plaintiff had

threatened to kill everyone there. (*Id.*). Plaintiff was subsequently arrested and charged with domestic assault and terroristic threats. (*Id.*)

Plaintiff also alleges that on October 18, 2023, Defendant Ratchford had Plaintiff arrested for a violation of the protective order when "Plaintiff was trying to talk to her daughter." (ECF No. 2 at 7). Plaintiff further alleges "Myle Ratchford by starting the initial false charge and then everyone took their turns disrespecting and degrading the plaintiff until she could no longer function in the world."[2] (*Id.* at 13).

Plaintiff identified these Defendants as private individuals, and nothing in the Complaint indicates they are state actors. Instead, it appears they merely contacted law enforcement, and perhaps a state Department of Human Services caseworker, in relation to Plaintiff's activities. This does not convert these private actors into state actors for the purposes of a Section 1983 claim. "[T]he mere invocation of state legal procedures, including police assistance, does not convert a private party into a state actor." *Wickersham v. City of Columbia*, 481 F.3d 591, 598 (8th Cir. 2007) (citing *See Youngblood v. Hy–Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)); *see also Grow v. Fisher*, 523 F.2d 875, 879 (7th Cir. 1975) ("The mere fact that the individual defendants were complainants and witnesses in an action which itself was prosecuted under color of law does not make their complaining or testifying other than what it was, i.e., the action of private persons not acting under color of law.").

**C. Private Attorneys**

Plaintiff identifies Defendant Ernie Witt as her privately retained criminal defense counsel. (ECF No. 2 at 8). Plaintiff identifies Charles Hoskyn as the private attorney "acting as the guardian

[2] To the extent this could be interpreted as a claim for defamation, this is also not a constitutional claim. Slander, defamation, and humiliation, while unprofessional and distasteful conduct, do not state a constitutional violation. "[D]efamation, *per se*, is not actionable under section 1983. *Underwood v. Pritchard*, 638 F.2d 60, 62 (8th Cir. 1981).

of the estate for Makayla-Mahony and funded by Defendant Ratchford, initiated civil proceedings to seize additional horses belonging to Plaintiff." (*Id*. at 7). Plaintiff identifies Kaleb Braumgarten as Plaintiff's privately retained civil and criminal counsel. (*Id*. at 11).

"Only state actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). A private criminal defense attorney is not a state actor for the purposes of § 1983. *See, e.g., Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981) ("[T]he Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *see also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (per curiam) (concluding that "[t]he attorneys who represented [the plaintiff], whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983") (citing *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (per curiam) (same) (listing cases)). Here, Plaintiff has identified these Defendants as private attorneys representing clients in the state court. As such, they are not state actors.

**D. Defendants Deputy Gilliam, Deputy Newhart and 911 Dispatcher Pells**

Plaintiff alleges that Defendants Deputy Gilliam and 911 Dispatcher Pells fabricated a claim that Plaintiff made terroristic threats during a 911 call, indicating that she stated she was going to kill her daughter. (ECF No. 2 at 5, 20). She further states that Defendant Gilliam "bypassed standard police protocol by stopping at an interim scene to collect statements exclusively· favoring the private co-conspirators." (*Id*. at 6). She alleges Gilliam executed a false arrest against her and spoiled evidence by ripping a report out of a witness's hand. Plaintiff does not identify the contents of the report. (*Id*.). She alleges Gilliam unlawfully entered her property after she was arrested to help her daughter and another Defendant steal Plaintiff proprietary business documents and horse. (*Id*. at 7, 18, 19). Plaintiff alleges she also told her horse boarder

that she would be gone for a while and suggested they move their horse elsewhere, causing Plaintiff to lose a monthly boarding fee. (*Id.*). Plaintiff attached copies of the dispatch call and Gilliam's incident report for the arrest on September 2, 2023. (*Id.* at 24, 25). Plaintiff also attached the first page of a replevin action by the estate of Makayla Mahony for four horses. (*Id.* at 27).

Plaintiff alleges that Defendant Deputy Newhart "intentionally falsified an official police report regarding a 'stolen horse' and an alleged kidnapping involving Plaintiff Karen Mahony. Defendant Newhart falsified key elements of the report, including law enforcement arrival times, interview details, and the chronological sequence of events." (ECF No. 2 at 4). She alleges he "acted in a pre-arranged conspiracy with private citizens Defendant Myle Ratchford, Defendant Sara Adams (Davis), and Department of Human Services (DHS) caseworker Kimberlyn Olsen." (*Id.* at 5). She alleges that he, along with Ratchford and Olsen weaponized these fabricated police narratives to initiate emergency child removal proceedings without due process." (*Id.*). Plaintiff does not identify what due process was missing from the DHS process. She alleges he "subjected Plaintiff to extreme coercion, isolation, and systemic duress. They actively severed all communication between Plaintiff and her minor child based on narratives they knew to be false." (*Id.*). Plaintiff attached an Incident Report written by Newhart. It stated that he was dispatched in reference to a possible kidnapping. Plaintiff initiated the call, and she told Newhart that her daughter Makayla said she was going to stay with a friend, and Plaintiff told her not to. (*Id.* at 23). It states that Plaintiff's daughter was with a friend, and Sarah Davis was the friend's mother. Davis told Newhart that Plaintiff's daughter did not feel safe coming home, and Plaintiff was not feeding her. (*Id.*). He contacted Kimberly Olson in DHS, and after an interview was conducted with Plaintiff daughter Makayla, it was determined that DHS would be taking custody of the daughter. (*Id.*). Plaintiff provides no further details concerning any DHS proceedings or lack thereof.

Plaintiff alleges that the criminal claims against her were fabricated and law enforcement reports falsified. The use of false or manufactured evidence concerning essential elements of a crime to obtain a no contest plea can state a cognizable due process claim. *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012) ("when Defendants conducted a conscience-shocking, reckless investigation and amassed false evidence that was used to box Plaintiffs into entering guilty pleas" a cognizable due process claim was stated.). Here, however, Plaintiff pleaded no contest to charges of domestic assault and terroristic threats,[3] and she has not alleged specific facts in this case sufficient to state a plausible constitutional due process claim. Instead, Plaintiff relies on the frequent repetition of vague and conclusory statements. Even a *pro se* Plaintiff must still allege specific facts sufficient to support a claim. *Martin*, 780 F.2d at 1337. Plaintiff initiated the calls to the police on August 24, 2023, and September 2, 2023. She does not provide any specific facts in her Complaint as to what, exactly, was falsified or fabricated. She states only that Defendant Newhart "falsified key elements of the report, including law enforcement arrival times, interview details, and the chronological sequence of events." (ECF No. 2 at 4). She failed to identify which "key elements."

Plaintiff also wrote comments on the exhibits attached to her Complaint. Only one of these comments has any relation whatsoever to the criminal charges of domestic assault and terroristic threats. On Newhart's Incident Report for August 24, 2023, Plaintiff states that she told the dispatcher that her daughter had run away, not that she was kidnapped. (ECF No. 2 at 23). She appears to dispute some facts about payment and paperwork concerning a horse. (*Id.*). She disputes that she appeared to be "strung out," stating that this was Newhart's "opinion not fact."

[3] Typically, "a plea of no contest in a matter forecloses a subsequent § 1983 claim . . .." *Oglesby v. Lesan*, 929 F.3d 526, 535 (8th Cir. 2019). However, in this case, Plaintiff's charges were ultimately dismissed after six months passed with no further incidents with her daughter. Without further information about the cases, it is difficult to determine if the *Heck* doctrine applies. Thus, for the purposes of this preservice screening only, the Court will not apply the *Heck* doctrine.

(*Id.*). On the dispatch call report for September 2, 2023, Plaintiff disputes that she threatened to kill her daughter, asking "Why would I kill her I just want my horse." (*Id.* at 24). The same dispatch report states that a neighbor had also called and reported that Plaintiff was "standing in the road screaming and stating she is going to kill someone." Plaintiff disputes that she was ever standing in the road. (*Id.*). Notably, Plaintiff does *not* dispute that she was threatening to kill someone. She also makes a statement that seems to be unrelated to the comments in the report, stating "On drugs why/Cause Myles said I said I have anxiety I'm on meds and have doctors note." (*Id.*). Plaintiff makes no comments on the Gilliam report, only underlining two names. Even if these disputed facts were incorrect, none of them are key elements to the criminal charges of domestic assault and terroristic threats. As such, they were not knowingly false or manufactured evidence used to obtain a false plea conviction. Plaintiff's allegations fail to rise to the level of a constitutional violation.

To the extent Plaintiff alleges false arrest, this claim also fails to state a plausible constitutional violation. An officer is entitled to "qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id.* (internal quotation marks and citation omitted). The existence of probable cause is a question of law. *Id.* at 1227. Here, Plaintiff provided evidence of the probable cause leading to her arrest. She then pleaded no contest to the charges arising from that arrest. No constitutional violation has been sufficiently stated by Plaintiff.

**E. Franklin County, Arkansas**

Plaintiff alleges no specific claims against Franklin County, Arkansas. To the extent her claims against Defendants Deputy Gilliam, Deputy Newhart and 911 Dispatcher Pells could be

interpreted as official capacity claims, Plaintiff has failed to allege any facts to support a plausible official capacity claim. *See Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) ("To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom ... or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."); *Arnold v. Corizon, Inc.*, No. 1:15CV62, 2015 WL 4206307, at *2 (E.D. Mo. July 10, 2015) (conclusory claims that defendants acted according to some unspecified policies or customs are not enough to state official capacity claims). Here, Plaintiff has identified no policy or custom of Franklin County, Arkansas which violated her constitutional rights.

**F. Child Custody**

To the extent Plaintiff alleges that she was deprived of the custody of her then-minor child in 2023, this Court does not have jurisdiction to review that issue. Other than the United States Supreme Court, federal courts are without jurisdiction to adjudicate claims which seek review of a state court decision on the ground that the decision violated the federal constitutional rights of one of the parties. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970); see *also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). "Unless the related state court decision has been invalidated, the federal court cannot act as a 'super' appeals court." *Pledge v. Scott*, 2024 WL 4189216, * 5 (N.D. IA Sept. 13, 2024).

Further, domestic relations law is governed by state law and state institutions. Principles of federalism preclude federal court challenges to state court orders in child custody and child support matters. *See e.g., Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979); *Owens v. Welch,*

*et al.*, 2009 WL 1203716, *3 (W.D. Ark. May 1, 2009). If the Plaintiff is dissatisfied with the rulings of a state court or institution regarding child custody issues, she must express that dissatisfaction in state court or with the state institution.

## IV. CONCLUSION

Accordingly, it is RECOMMENDED that Plaintiff's Motion to Proceed *in forma pauperis* (ECF No. 3) and Motion for Service (ECF No. 4) be DENIED, and her Complaint (ECF No. 2) be DISMISSED WITHOUT PREJUDICE.

*Referral Status*: This case should not remain referred because all matters have been recommended for dismissal in this Report and Recommendation.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in a waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of September 2026.

/s/ Mark E. Ford

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE